FILED
11/3/26 3:19 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Case No. 25-20549-GLT |
| **REBECCA A. BRYAN**, *Debtor*. | Chapter 7 |
| **WILLIAM VESCIO, KATHRYN A. CONSTANTAKIS, AND BRYAN VESCIO**, *Plaintiffs*, | Adv. Pro. No. 25-2053 |
| v. | Related to Dkt. Nos. 63, 65, 69 |
| **REBECCA A. BRYAN**, *Defendant*. | |
| In re: | Case No. 25-20440-GLT |
| **KAREN A. BRYAN**, *Debtor*. | Chapter 7 |
| **WILLIAM VESCIO, KATHRYN A. CONSTANTAKIS, AND BRYAN VESCIO**, *Plaintiffs*, | Adv. Pro. No. 25-2054 |
| v. | Related to Dkt. Nos. 70, 72, 76 |
| **KAREN A. BRYAN**, *Defendant*. | |

David Z. Valencik, Esq.
Andrew K. Pratt, Esq.
Calaiaro Valencik
Pittsburgh, PA
*Attorneys for Rebecca A. Bryan*

Ryan J. Cooney, Esq.
Paul R. Toigo
Cooney Law Offices, LLC
Pittsburgh, PA
*Attorneys for Karen A. Bryan*

Kathryn L. Harrison, Esq.
Campbell & Levine, LLC
Pittsburgh, PA
*Attorney for the Plaintiffs*

**MEMORANDUM OPINION**

Debtor-defendants Rebecca and Karen Bryan commenced chapter 7 bankruptcies after a three-and-a-half-week trial in which plaintiffs William Vescio, Kathryn Constantakis, and Bryan Vescio obtained a favorable jury verdict, but before several post-trial motions were decided. The Plaintiffs now seek stay relief, to the extent that it was not already granted by consent, to allow the state court to conclude the litigation and finalize a judgment.[1] The Debtors deny they consented to such relief and oppose it now.[2] For the reasons set forth below, the Court finds that cause exists to modify the stay to remove any doubt that the state court may enter a final judgment.

## I. BACKGROUND

By way of background, a jury verdict was entered against the Debtors and in favor of the Plaintiffs in the Court of Common Pleas of Allegheny County, Pennsylvania on October 14, 2024. The verdict determined that the Debtors were liable for tortious interference with the Plaintiffs' contractual relations.[3] The Debtors each filed motions for post-trial relief on October 28, 2024, but they commenced chapter 7 cases in early 2025 before the state court ruled on those motions. Suggestions of bankruptcy followed and the state court stayed all proceedings.

Several months later, the Plaintiffs sought relief from the automatic stay for the purpose of finalizing the state court litigation to support their imminent nondischargeability

---

1 See *Motion for Relief from Automatic Stay and/or To Modify Stay Relief Per Stipulation and Consent Order of the Parties at Docket No. 63*, Adv. Pro. No. 25-02053-GLT, Dkt. No. 65; *Motion for Relief from Automatic Stay and/or To Modify Stay Relief Per Stipulation and Consent Order of the Parties at Docket No. 70*, Adv. Pro. No. 25-02054-GLT, Dkt. No. 72.

2 See *Response in Opposition to Motion for Relief from the Automatic Stay and/or To Modify Stay Relief*, Adv. Pro. No. 25-2053-GLT, Dkt No. 69; *Response in Opposition to Motion for Relief from the Automatic Stay and/or To Modify Stay Relief*, Adv. Pro. No. 25-2054-GLT, Dkt No. 76. For the sake of efficiency, the Court will limit its citations to a single case because the pleadings in each case are substantial similar, if not identical.

3 As to Rebecca Bryan, the jury awarded compensatory damages in favor of each Plaintiff in the amount of at least $2,635,000. An additional award of $2,965,000 in compensatory damages was awarded against Karen Bryan in favor of William Vescio and Kathryn Constantakis.

complaints against the Debtors.[4] The Debtors opposed, citing cost burdens and delay,[5] and arguing that stay relief was unnecessary because the claim was now liquidated.[6] Weeks later, the Plaintiffs commenced adversary proceedings against the Debtors seeking to except the debts arising from the jury verdict from their discharges under section 523(a)(6) of the Bankruptcy Code.[7]

The Court heard the motions for relief in conjunction with the Debtors' subsequently filed motions to dismiss the adversaries in October 2025.[8] By then the parties had resolved the motions to dismiss by agreeing that the Plaintiffs would file amended complaints to which the Debtors would then respond. With respect to stay relief, the Plaintiffs asserted that judicial economy was best served by finalizing the previously tried three-and-a-half-week complex litigation.[9] The Debtors argued that would be an exercise in futility because the jury verdict, even if reduced to a final judgment entitled to preclusive effect, would not satisfy section 523(a)(6).[10] Ultimately, the Court found stay relief premature in the absence of amended pleadings because it was unclear whether the state court determination would aid the evaluation of nondischargeability.[11]

---

4 See, e.g., *Amended Motion for Relief from Automatic Stay*, Case No. 25-20549-GLT, Dkt. No. 42 at ¶¶ 11-12.

5 The state court timetable was understandably complicated by the retirement of the Honorable Christine A. Ward, who presided over the multi-week trial, and the reassignment of the post-trial motions to the Honorable Mary C. McGinley.

6 Id. at 3.

7 Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

8 Although the Court conducted an initial hearing in September, a continuance was necessary for the parties to supplement the record to provide greater detail regarding the status of the state court litigation.

9 The Plaintiffs also raised concerns about the practicality of moving forward against the two non-debtor defendants and the risk of inconsistent outcomes. *Transcript of October 24, 2025 Hearing*, Case No. 25-20549-GLT, Dkt. No. 84 at 15:10-21.

10 Id. at 19:10-21:9.

11 Id. at 24:12-26:8.

Months later, after the pleadings were closed, the Plaintiffs moved for summary judgment against each Debtor, contending that the jury verdict was entitled to preclusive effect.[12] The Debtors opposed, insisting that a jury verdict is not a final judgment and that they retained rights under the post-trial motions.[13]

When the matter came before the Court, the Plaintiffs lamented the seeming unfairness and inconsistency of the Debtors' positions. Recognizing that case law supported the nondischargeability of a judgment for intentional interference with contractual relations under Pennsylvania law,[14] the Court questioned whether stay relief was appropriate to avoid re-trying such a complex case.[15] In response, the Debtors conceded that they (at that time) lacked a compelling argument against granting stay relief to permit the state court to finalize the litigation.[16] The Court denied summary judgment, but scheduled a status conference to allow the parties to digest its comments.

Before the status conference, the parties filed a *Stipulation and Consent Order of the Parties* (the "Consent Order"). Presumably anticipating the Court's likely action, the parties agreed to stay relief "for the limited purpose of allowing the Court of Common Pleas to rule on the Post-Trial Motions."[17] The Court signed the *Consent Order* the same day and cancelled the status conference.

---

12 See, e.g., *Motion of William Vescio, Bryan Vescio, and Kathryn A. Constantakis for Summary Judgment*, Adv. Pro. No. 25-2053-GLT, Dkt. No. 38.

13 See, e.g., *Defendant's Response to Motion for Summary Judgment*, Adv. Pro. No. 25-2053-GLT, Dkt. No. 51.

14 See NITC Fed. Servs. v. Herring (In re Herring), No. AP 20-00180-MDC, 2021 WL 1604327, at *1 (Bankr. E.D. Pa. Apr. 22, 2021).

15 *Audio Recording of October 24, 2025 Hearing* at 1:48:52-1:49:35.

16 Id. at 1:49:45-1:51:30.

17 See, e.g., *Stipulation and Consent Order of the Parties*, Adv. Pro. No. 25-2053-GLT, Dkt. No. 63 at ¶ 1.

About a month later, the Plaintiffs filed the motions for relief seeking to affirm or modify the relief granted under the *Consent Order*.[18] They explained that Judge McGinley held a status conference and noted that under Pennsylvania Rule of Civil Procedure 227.4, the Plaintiffs were entitled to praecipe for a judgment because more than 120 days had passed without a ruling on the post-trial motions.[19] Believing that was her preference, the Plaintiffs did so, though it was rejected due to a filing error.[20] The Debtors then asserted that such a praecipe was beyond the scope of stay relief because it was not a ruling on the post-trial motions.[21] Rather than refile the praecipe in advance of the state court's November 4, 2026 hearing, the Plaintiffs returned to this Court out of an abundance of caution.[22]

Again, the Debtors opposed the relief sought by the Plaintiffs, contending that they "did not consent to the entry of judgment against her or to any other 'resolution' beyond a ruling by the Court of Common Pleas on the Post-Trial Motions."[23] In fact, they deny that a praecipe under Pa. R. Civ. P. 227.4 is a "ruling on the Post-Trial Motions" since it is directed to the clerk because the motions were not decided.[24] The Debtors also argued that no cause for stay relief

---

[18] See, e.g., *Motion for Relief from Automatic Stay and/or To Modify Stay Relief Per Stipulation and Consent Order of the Parties at Docket No. 63*, Adv. Pro. No. 25-2053-GLT, Dkt. No. 65.

[19] Id. at ¶ 7. Karen Bryan filed her chapter 7 bankruptcy petition on February 25, 2025, which was the 120th day after her post-trial motions were filed. Conversely, Rebecca Bryan filed her petition on March 4, 2025, well after the 120-day period lapsed. The parties have not addressed the impact, if any, that section 108 might have on Karen's case.

[20] Id. at ¶¶ 8-9.

[21] Id. at ¶ 9; see also *Response in Opposition to Motion for Relief from the Automatic Stay and/or To Modify Stay Relief*, Adv. Pro. No. 25-2053-GLT, Dkt. No. 69 at ¶¶ 8, 11.

[22] See, e.g., *Motion for Relief from Automatic Stay and/or To Modify Stay Relief Per Stipulation and Consent Order of the Parties at Docket No. 63*, Adv. Pro. No. 25-2053-GLT, Dkt. No. 65 at ¶ 11.

[23] See, e.g., *Response in Opposition to Motion for Relief from the Automatic Stay and/or To Modify Stay Relief*, Adv. Pro. No. 25-2053-GLT, Dkt. No. 69 at ¶ 16.

[24] See, e.g., *Response in Opposition to Motion for Relief from the Automatic Stay and/or To Modify Stay Relief*, Adv. Pro. No. 25-2054-GLT, Dkt. No. 76 at ¶¶ 11, 26.

exists to finalize a judgment where the trial has already concluded.[25] Indeed, the Debtors posited that obtaining a final judgment adds only to the enforceability of the jury verdict, which is precisely the type of collection action barred by the stay.[26] Moreover, they assert that the Plaintiffs will suffer no prejudice if expanded relief is denied because the post-trial motions are already scheduled for argument on November 4, 2026.[27]

The Court heard the motions for relief on October 29, 2026. Notably, the Debtors insisted that the *Consent Order* only authorized a merits-based ruling on the post-trial motions, and any other reading would deny them the benefit of their bargain. When the Court questioned its authority to direct or curtail Judge McGinley's discretion over matters pending before her, the Debtors answered that that is exactly the function of the automatic stay. At the conclusion of the hearing, the Court took the matter under advisement.

## II. JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

## III. DISCUSSION

To cut right to it, the Court finds the Debtors' position inconsistent and opportunistic. Although the nondischargeability proceedings do not depend on the conclusion of the state court litigation, the issues are obviously intertwined since one forms the basis of the other.

---

25 See, e.g., *Response in Opposition to Motion for Relief from the Automatic Stay and/or To Modify Stay Relief*, Adv. Pro. No. 25-2053-GLT, Dkt. No. 69 at ¶¶ 30, 32-40.

26 Id. at ¶¶ 34, 38.

27 Id. at ¶ 29; *Response in Opposition to Motion for Relief from the Automatic Stay and/or To Modify Stay Relief*, Adv. Pro. No. 25-2054-GLT, Dkt. No. 76 at ¶¶ 20, 29-31.

Stay relief entered the conversation because the jury verdict had not been reduced to a final judgment and, therefore, lacked preclusive effect in the nondischargeability proceedings.[28] In other words, despite completing a complex three-and-a-half-week trial in the state court, the adversaries would need to start from scratch as to all issues. Unsurprisingly, the Debtors have carefully avoided acknowledging that reality, instead focusing on the idea that some issues must be litigated in the bankruptcy court in any event. Still, the Debtors clearly want a do-over which, frankly, the Court will not entertain.

Contextually, the *Consent Order* was not a spontaneous agreement among the parties. It was prompted by this Court strongly signaling that it would not re-try a matter over Judge McGinley simply finalizing the litigation. As drafted, the *Consent Order* lifted the stay to "allow[] the Court of Common Pleas to rule on the Post-Trial Motions."[29] The words "on the merits" neither appear nor are implied. While the Debtors may have expected a substantive ruling rather than a procedural one, that is beside the point. The Court understood the *Consent Order* to allow Judge McGinley to take whatever steps were necessary and appropriate to dispose of the post-trial motions and enter a final, preclusive judgment. Otherwise, *what would have been the point of this exercise?*[30]

The Debtors' assertion that a judgment entered under Pa. R. Civ. P. 227.4 is expressly not a ruling on the post-trial motions has superficial appeal, but (again) context matters. The Court agrees that bypassing Judge McGinley entirely to obtain a judgment from the

---

28 See Belmonte v. Belmonte (In re Belmonte), 279 B.R. 812, 814 (E.D. Pa. 2001).

29 *Stipulation and Consent Order of the Parties*, Adv. Pro. No. 25-2053-GLT, Dkt. No. 63 at ¶ 1.

30 Without a final judgment, a ruling on the post-trial motions would be as meaningless as the trial, so it is absurd to suggest that stay relief did not necessarily encompass one. Of course, the Court presumes that the Debtors would not oppose a final judgment if they prevailed on their post-trial motions.

prothonotary violates both the terms and spirit of the *Consent Order.*[31] That said, if Judge McGinley prefers the Plaintiffs do so rather than ruling on the post-trial motions, she is effectively disposing of them within her discretion. The automatic stay simply does not empower this Court to force Judge McGinley to make a merits-based ruling. And there is no reason why the Court would impede the finalization of a judgment that facilitates the efficient and economical resolution of the nondischargeability proceedings.

Even assuming that the scope of relief granted by *Consent Order* is as narrow as the Debtors maintain, cause exists to modify the stay under section 362(d)(1).[32] "Cause" is a "broad and flexible concept."[33] It "is undefined in the statute, so courts must determine it 'based on the totality of the circumstances in each particular case.'"[34] To that end, courts "consider the policies reflected in the bankruptcy code, and the interests of the debtor, other creditors and any other interested parties."[35] "Cause" may exist to continue prepetition litigation after weighing several factors, including:

1. judicial economy;

2. trial readiness;

3. the potential for interference with the bankruptcy case;

4. the impact on the bankruptcy estate and creditors;

5. the likelihood of success on the merits in the non-bankruptcy litigation;

---

31 To the extent that the Plaintiffs' praecipe was rejected, the Debtors were not harmed and the Court need not determine the degree to which Judge McGinley invited such action.

32 See 11 U.S.C. § 362(d)(1).

33 O'Neal Steel, Inc. v. Chatkin (In re Chatkin), 465 B.R. 54, 60 (Bankr. W.D. Pa. 2012) (quoting In re Brown, 311 B.R. 409, 412–13 (E.D. Pa. 2004)) (internal quotation marks omitted).

34 U.S. v. Olayer (In re Olayer), 577 B.R. 464, 471 (Bankr. W.D. Pa. 2017) (citing Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997)).

35 In re Brown, 311 B.R. at 413; see In re Olayer, 577 B.R. at 471; In re Chatkin, 465 B.R. at 60.

6. the presence of non-debtor parties in the litigation;

7. the applicable forum's familiarity with the underlying legal issues;

8. the presence of state law issues; and

9. whether allowing the litigation to proceed will aid in resolving the bankruptcy case.[36]

Ultimately, bankruptcy courts have "wide latitude in crafting relief from the automatic stay."[37]

Not to belabor the point, but unless the state court litigation is brought to a final judgment, the three-and-a-half-week trial will have been an expensive and time-consuming nullity. Rather than establishing a basis for the Plaintiffs' claims, they will need to prove everything anew in the nondischargeability proceedings. Such a result is tremendously prejudicial to the Plaintiffs and a stunning waste of judicial resources. In contrast, the Court discerns no prejudice to the Debtors or their fully-administered estates if the stay is modified solely to permit Judge McGinley to finalize the litigation.

Finally, the Debtors' analysis of cause is irrational. They concede that the case law supports modifying the stay to "*continue* unfinished, trial-ready litigation and to *liquidate* still contested claims."[38] Nevertheless, they inexplicably draw the line at "formaliz[ing] a verdict already rendered."[39] In doing so, the Debtors seek to characterize litigation as "finished" once the trial has concluded with a jury verdict even if a final, preclusive judgment never enters. Yet they simultaneously insist that their outstanding post-trial motions are more than a ministerial

---

36 International Unions, Security, Police and Fire Professionals of America v. Maritas (In re Maritas), 664 B.R. 670, 675 (Bankr. W.D. Pa. 2024).

37 In re Myers, 491 F.3d 120, 129 (3d Cir. 2007).

38 See *Response in Opposition to Motion for Relief from the Automatic Stay and/or To Modify Stay Relief*, Adv. Pro. No. 25-2054-GLT, Dkt. No. 76 at ¶ 35 (emphasis in original).

39 Id.

impediment as a defense to preclusion.[40] Obviously, the litigation is either done or it is not, and if it is not, "cause" exists to modify the stay. The Debtors cannot have their cake and eat it too.

In sum, the Court finds the *Consent Order* lifted the stay to allow the state court to finalize the litigation pending before it and afford it preclusive effect. Nothing short of that makes any sense or serves any purpose. So even if the *Consent Order*'s terms were insufficient to achieve that result, the Court will further modify the stay to remove any doubt. That said, the finalization of the judgment shall not authorize the Plaintiffs to enforce the judgment, obtain a lien, or otherwise change their position relative to other creditors.

## IV. CONCLUSION

In light of the foregoing, the Court will grant the motions for relief. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

sjb

Dated: November 3, 2026

GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:

40 Id. at ¶¶ 32-42.